*No page 2 and 3 for the cover sheet.*

*NO CV 30*

*N/S*

*Related DDJ*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION



FILED
CLERK, U.S. DISTRICT COURT
JAN 10 2017
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LONNY BRISTOW,
General Delivery
Mansfield, Ohio 44901

    PLAINTIFF,

v.

CALVIN JOHNSON, Warden
Federal Correctional Complex
P.O. Box 5400
Adelanto, California 92301

    and

LT. SORENSON, S.I.S.
Victorville Medium II
P.O. Box 3850
Adelanto, California 92301

    and

LT. MARTIN, S.I.S.
Victorville Medium II
P.O. Box 3850
Adelanto, California 92301

    and

MR. MCAFFERTY, Associate Warden
Federal Correctional Complex
P.O. Box 5400
Adelanto, California 92301

Hon. _____

Hon. _____

Case No. EDCV17-31-JLS (PLA)

**BIVENS CLAIMS**

**JURY TRIAL DEMANDED**

**COMPLAINT FOR MONETARY RELIEF**

RECEIVED
CLERK, U.S. DISTRICT COURT
JAN -9 2017
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Adelanto, California 92301

DEFENDANTS.

## I. Jurisdiction

This honorable court retains jurisdiction over these claims pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).

## II. Capacities

Each defendant is hereby sued in their *individual* capacities.

## III. Qualified Immunity

None of the defendants are entitled to qualified immunity because they have violated clearly established law and/or their actions were done maliciously and/or in bad faith.

## IV. Jury Demand

Plaintiff hereby demands a trial by jury on all issues triable by jury by the maximum allowable number of jurors.

## V. Clarification

This is *solely* a *Bivens* case. This case seeks redress for violations of federally protected constitutional rights by federal employees. This case in no way addresses negligence of any sort.

## VI. Exhaustion of Administrative Remedies

This complaint was filed *after* this plaintiff was released from prison and *after* this plaintiff was *completely* discharged from the Residential Reentry Center. At the time this complaint is being filed, this plaintiff is *completely* released from any and all incarceration. Consequently, failure to exhaust administrative remedies is no defense to this cause of action. *Talamantes v. Leyva,* 575. F. 3d 1021, 1023-24 (9th Cir. 2009).

## VII. Complaint

1. When plaintiff began his incarceration in the B.O.P., he started in 2013 as high security at a U.S.P.

2. Because Bristow had no disciplinary history, was a model inmate, and voluntarily completed numerous educational and rehabilitative programs, at Bristow's *first* security status review, he was reduced from high security and placed at medium security status. While at the U.S.P., Bristow had *no* issues or problems with his mail or e-mails.

3. On or about February 5, 2015, due to model inmate behavior, Bristow was transferred to Victorville Medium II prison in Victorville/Adelanto, a medium security prison.

4. Soon after Bristow's arrival, because Bristow was repeatedly trying to obtain his personal property from his previous institution, a staff member got in Bristow's face and tried to provoke Bristow into a physical confrontation. However, Bristow immediately went and talked to defendant McAfferty and told him in front of the dining room what had just happened. Bristow subsequently submitted BP-8's about not getting his property and about the staff member getting in Bristow's face.

5. Bristow exercised his constitutional rights by filing complains through the administrative remedy/grievance procedure.

6. Defendant McAfferty took adverse action against Bristow by directing defendants Martin and Sorenson to place Bristow on "communications monitoring" to retaliate against Bristow for filing complaints, both written and verbal.

7. Defendant McAfferty told this plaintiff that he instructed the communications monitoring to begin.

8. Communications monitoring is where Martin and Sorenson first intercept and read, and then send, any and all incoming and outgoing mail and e-mails to and from an inmate. This obviously causes delays in an inmate's correspondence, incoming and outgoing.

9. Martin and Sorenson subsequently tried to tell Bristow that the communications monitoring was due to Bristow's criminal charges. Interestingly, at the time this started, Bristow did not have any disciplinary history what so ever. Moreover, Bristow was at a _higher security_ prison and did not have these issues. Bristow was only transferred to Victorville Medium II after exhibiting _model inmate behavior_. It was only after Bristow transferred to Victorville Medium II and filed complaints, written and verbal that he was all the sudden placed on communications monitoring, causing delays in the sending and receiving of any and all written communications.

### Count I – Retaliation

Defendant McAfferty violated Bristow's 1st Amendment right by taking adverse action against Bristow (directing that communications monitoring begin) because Bristow exercised his constitutional right to file a BP-8 and verbally complained.

### Count II – Retaliation

Defendant Martin violated Bristow's 1st Amendment right between March 11, 2015 and April 27, 2015, by taking adverse action against Bristow (intercepting and delaying Bristow's incoming and outgoing mail and e-mails) because Bristow engaged in constitutionally protected activity (filed the BP-8 and verbally complained to McAfferty).

### Count III – Retaliation

Defendant Sorenson violated Bristow's 1st Amendment right between March 11, 2015 and April 27, 2015, by taking adverse action against Bristow (intercepting and delaying Bristow's incoming and outgoing mail and e-mails) because Bristow engaged in constitutionally protected activity (filed the BP-8 and verbally complained to Mcafferty).

### Count IV – Conspiracy to Retaliate

Defendants Sorenson, McAfferty and Martin have engaged in a conspiracy to violate Bristow's 1st Amendment right to be free from Retaliation by expressly or impliedly agreeing to take adverse action against Bristow (communications monitoring) between March 11, 2015 and April 27, 2015, and then they did that execute that agreement by delaying all of Bristow's incoming and outgoing U.S. mail and e-mails because Bristow engaged in constitutionally protected activity (by filing complaints).

### Count V – Right to Receive U.S. Mail

Defendant McAfferty violated Bristow's 1st Amendment right, between March 11, 2015 and April 27, 2015, to receive U.S. mail by directing communications monitoring causing delays of longer than 48 hours for Bristow' U.S. mail to be delivered after said mail arrived at the institution (excluding weekends and holidays).

### Count VI – Right to Send U.S. Mail

Defendant McAfferty violated Bristow's 1st Amendment right, between March 11, 2015 and April 27, 2015, to send U.S. mail by directing communications monitoring, causing delays of longer than 48 hours for Bristow's outgoing U.S. mail to be delivered to the post office once Bristow submitted it (excluding weekends and holidays).

### Count VII – Right to Receive U.S. Mail

Defendants Martin and Sorenson violated Bristow's 1st Amendment right, between March 11, 2015 and April 27, 2015, to receive U.S. mail, by delaying said incoming U.S. mail longer than 48 hours after it arrived at the institution (excluding weekends and holidays).

### Count VIII – Right to Send U.S. Mail

Defendants Martin and Sorenson violated Bristow's 1st Amendment right, between March 11, 2015 and April 27, 2015, to send U.S. mail, by delaying said outgoing mail longer than 48 hours after Bristow submitted it for mailing (excluding weekends and holidays).

### Count IX – Conspiracy to Delay U.S. Mail
### (Incoming and Outgoing)

Defendants McAfferty, Martin and Sorenson engaged in a conspiracy between March 11, 2015 and April 27, 2015, to violate Bristow's 1st Amendment right to send and receive U.S. mail, by expressly and/or impliedly agreeing to delay Bristow's incoming and outgoing U.S. mail longer than 48 hours (excluding weekends and holidays), and they did then execute that agreement by delaying Bristow's incoming and outgoing U.S. mail longer than 48 hours (excluding weekends and holidays).

8. Between March 11, 2015 and April 27, 2015, Bristow filed *numerous* complaints directly against S.I.S. staff because of the delays in processing Bristow's incoming and outgoing U.S mail. Bristow even submitted a lawsuit to state court regarding S.I.S. staff delaying Bristow's incoming and outgoing U.S. mail.

9. Interestingly, the very day S.I.S. staff were served the amended complaint in that state lawsuit, S.I.S. staff responded to an institutional complaint dated April 28 and April 29, 2015, stating the communications monitoring began on March 11, 2015, but because the "criteria" changed on March 18, 2015, that the monitoring would be removed. In other words, the monitoring began on March

11, 2015, but the criteria changed to exclude Bristow from said monitoring just seven (7) days after it started, on March 18, 2015, but these defendants continued the monitoring until April 28/29, 2015, the day they were served with an amended complaint in a lawsuit.

10. These defendants have admitted in writing that the monitoring occurred between March 18, 2015 and April 27, 2015 (despite the fact the criteria had changed to exclude Bristow from the monitoring during this span of time).

11. These defendants have foolishly claimed the monitoring was done due to Bristow's offense conduct, however, the monitoring did not begin until almost a month and a half *after Bristow arrived* at the institution and *after* Bristow was interviewed by S.I.S. staff the *day he arrived at the institution.* Bristow had previously been at *numerous* other institutions, all without incident. Bristow had been in the B.O.P. for twenty-one (21) months with zero disciplinary history and had been at Victorville Medium II for almost a month and a half with zero disciplinary history when these defendants decided to start messing with Bristow's mail...but...the messing with Bristow's mail began just days after Bristow filed complaints, verbally and in writing. Interesting!!! The messing with Bristow's mail did not begin until *after* Bristow was <u>reduced from high to medium security as a reward for model inmate behavior</u>. Interesting!!! In other words...these defendants placed Bristow on more restrictions at a *lesser* security level than he had a *higher* security level. Interesting!!!

12. Nevertheless, now, S.I.S. staff was really upset at being sued and made to look like fools and on paper, at least,

they had to stop the monitoring because Bristow did not fit the criteria anyway. Defendants retaliated against Bristow for writing complaints and then Bristow won the complaint. What do corrupt officials do next? They retaliate even more!!!

13. Just days after Bristow purportedly won the issue and the communications monitoring would cease, at least, according to what the response to the complaint stated, on May 4, 2015, Defendant Sorenson issued an incident report on Bristow accusing him of a serious rule violation, a Rule 296, claiming Bristow did not have a staff member seal a piece of legal mail Bristow was sending out. However, because Bristow was able to seal his own legal mail, which Defendant Sorenson *already knew,* Bristow was found *not guilty* of the Rule 296.

### Count X – Retaliation

On or about May 4, 2015, Defendant Sorenson violated Bristow's 1st Amendment right to be free from Retaliation, by taking adverse action against Bristow (issuing a false incident report for a 296 that Bristow was institutionally found *not guilty* of) because Bristow engaged in constitutionally protected activity (filed complaints and litigation against staff).

14. When Defendant Sorenson wrote the false incident report on Bristow on or about May 4, 2015, Bristow then e-mailed his father and said some unflattering things about Sorenson to Bristow's father *without* identifying Sorenson by name. However, because the communications monitoring never really stopped as was claimed on paper, on or about May 6, 2015, defendant Sorenson, conducting "routine monitoring" (yeah, right) came across the e-mail Bristow sent to his father.

15. In response to the e-mail Bristow sent to his father, Defendant Sorenson issued Bristow a _second_ incident report accusing Bristow of _threats_ and _insolence_ toward Sorenson for the contents of the e-mail to Bristow's father. In said incident report, Defendant Sorenson's maliciousness becomes crystal clear: she claimed in the incident report, on May 6, 2015, that Bristow "knew" that S.I.S. would read that mail, which was clearly by the April 28/29, 2015, complaint response clearly stating the communications monitoring would be _removed_. When Defendant Sorenson claimed Bristow knew that e-mail would be read, Sorenson knew that to be false, because she knew Bristow was told the communications would be removed.

16. Nevertheless, the institutional D.H.O. (Disciplinary Hearing Officer) <u>outright acquitted Bristow of any and all charges what so ever finding Bristow ENTIRELY NOT GUILTY</u>!!!

17. This _completely false_ incident report by Sorenson caused Bristow to be placed in the S.H.U.

### Count XI – Retaliation

On or about May 6, 2015, Defendant Sorenson violated Bristow's 1st Amendment right by taking adverse action against Bristow (authoring a false incident report on Bristow that caused Bristow to be placed in the S.H.U. for which Bristow was found <u>not guilty of)</u> because Bristow engaged in constitutionally protected activity (freedom of expression in the e-mail to Bristow's father…and…the previous complaints Bristow submitted and lawsuit Bristow filed against S.I.S. staff).

18. Now, S.I.S. staff were really angered. Bristow was prevailing against these defendants at every level. So what did the defendants do? Retaliate even more!!!

19. When Bristow was outright acquitted of the retaliatory and harassing incident report, Bristow should have been released from the S.H.U. No, logic does not apply with these defendants. Rather, these defendants requested that plaintiff be transferred to another institution due to <u>the incident report that this plaintiff was outright acquitted of and the D.H.O. report specifically stated there was NO EVIDENCE that this plaintiff threatened or was insolent toward Sorenson</u>.

### Count XII – Retaliation (S.H.U.)

Defendants Johnson, Martin, Sorenson and McAfferty violated this plaintiff's 1st Amendment right, on or about June of 2015, thru plaintiff's transfer to Mendota, by taking adverse action against plaintiff (holding plaintiff in the S.H.U. for months) because this plaintiff engaged in constitutionally protected activity) sent the e-mail to Bristow's father, filed complaints and litigation against the institution.

### Count XIII – Retaliation (Transfer)

Defendants Johnson, Martin, Sorenson and McAfferty violated this plaintiff's 1st Amendment right, on or about June of 2015, by taking adverse action against this plaintiff (recommending plaintiff be transferred to another institution) because Bristow engaged in constitutionally protected activity (filed complaints and complaints and litigation against the institution as well as sent the e-mail to Bristow's father). Plaintiff was transferred as a result.

20. Again, this plaintiff was placed in the S.H.U. because this

plaintiff sent an e-mail to Bristow's father saying unflattering things about Sorenson which she did not like. However, Bristow was outright acquitted of any and all wrongdoing with respect to the contents of that e-mail.

21. When plaintiff was placed in the S.H.U., plaintiff immediately began sending mail to Bristow's father, mother, aunt and brother. Interestingly, Bristow was not receiving any responses to any of the mail Bristow was sending out. The first letter from the S.H.U. Bristow sent to his father was a 13 page letter.

22. Several weeks later, Bristow received a call to his father and it was discovered that Bristow's father never received the 13 page letter. Bristow had his father go on another phone and call Bristow's mother and aunt. They too, never received the first letters Bristow mailed to them. Defendants Martin and Sorenson actually stole plaintiff's first letters that Bristow mailed to his father, brother, mother and aunt. All other mail was _still being delayed_ just like Bristow was still on communications monitoring.

23. In the S.H.U., at night, staff print out a list of inmates who are on communications monitoring so S.H.U. staff knows whose mail to send to Martin and Sorenson for the communications monitoring to be completed.

24. In mid June, after Bristow had been in the S.H.U. for about a month and a half, it occurred to Bristow that perhaps the communications monitoring never really stopped messing with Bristow's mail. Therefore, in mid June of 2015, Bristow stayed up until 3:00 in the morning and asked the officer to look and see if Bristow's name

was on the communications monitoring and sure enough, *it was*.

25. Later that morning after breakfast, Bristow placed his hand outside the cuffport and refused to allow the cuff port to be closed until Bristow spoke to a supervisor. Lt. Olivetti (supervisor for Martin and Sorenson) came to talk to Bristow and Bristow explained that Martin and Sorenson were still harassing Bristow and Bristow provided Lt. Olivetti the complaint response stating the communications monitoring would be removed *as Bristow did not fit the criteria*.

26. To Bristow's surprise, Lt. Olivetti actually went and handled the situation as defendant Martin later came by Bristow's door and stated that he and Sorenson "inadvertently" "forgot" to take Bristow's name off the communications monitoring list . This is simply impossible. Martin and Sorenson were still receiving Bristow's mail and delaying it and *stealing it*.

27. So, these defendants began harassing plaintiff with respect to his mail on March 11, 2015, despite the fact the criteria changed to exclude Bristow from monitoring just seven (7) days later on March 18, 2015, and continued officially, on paper, until April 28/29, 2015, at which time defendants acknowledged the monitoring would stop, yet, the monitoring did not stop until mid June of 2015.

### Count IX – Retaliation

Defendants Sorenson and Martin, beginning April 30, 2015, through mid June of 2015, violated plaintiff's 1st Amendment right by taking adverse action against Bristow (continuing to delay and

steal Bristow's mail) because Bristow engaged in constitutionally protected activity (filed complaints and litigation against the institution as well as sent the e-mail to Bristow's father).

### Count XV – Right to Send U.S. Mail

Defendants Sorenson and Martin, beginning April 30, 2015, through mid June of 2015, violated this plaintiff's 1st Amendment right to send U.S. mail by stealing the first letters Bristow mailed to his mother, father, aunt and brother, as well as delayed all other outgoing mail.

### Count XVI – Right to Receive U.S. Mail

Defendants Sorenson and Martin, beginning April 30, 2015, through mid June of 2015, violated this plaintiff's 1st Amendment right to receive U.S. mail by continuing to delay and all incoming mail addressed to this plaintiff.

### Count XVII – Conspiracy

Defendants Martin and Sorenson violated this plaintiff's 1st Amendment right by engaging in a conspiracy by expressly and/or impliedly agreeing to continue to receive, delay and steal plaintiff's incoming and outgoing U.S. mail between April 30, 2015 and mid June of 2015, and then executing that agreement.

28. Not one of the actions by any of the defendants herein was done with a legitimate penological interest in mind. These defendants' extreme abuse is so blatant it is unbelievable.

29. The actions by these defendants most certainly had a chilling effect on free speech and freedom of expression.

30. This plaintiff has spent most of his adult life incarcerated. This plaintiff has *never* before seen any staff so extremely bold at retaliation and corruption.

31. It is also noteworthy that this plaintiff never had *any* problems with any staff *at any* other institution within which plaintiff was incarcerated throughout his *entire* stay in the B.O.P.

## Relief Requested

WHEREUPON, plaintiff respectfully requests the following relief:

MONETARY- (Compensatory) $1.00 in punitive damages from each defendant, individually.

(Punitive) $250,000.00 from each defendant, individually.

OTHER – Any other relief the court may deem just and equitable.

Respectfully submitted,

_____
Lonny Bristow
Plaintiff (Pro-se)
General Delivery
Mansfield, Ohio  44901

Lenny Bristow
8058 Critchfield Road
Shreve, Ohio 44676

Clerk
U.S. District Court
312 North Spring Street
Los Angeles, California
90012

RECEIVED
CLERK, U.S. DISTRICT COURT
JAN - 9 2017
CENTRAL DISTRICT OF CALIFORNIA
BY: DEPUTY